Richard J. Daronco, J.
Each of the above-entitled proceedings involves an application for an order of the Family Court for the special educational needs of a physically handicapped child under section 232 (subd. [a], par. [1]) of the Family Court Act.
At the outset it is noted that no statement has been made to the court by any party in each of the above-entitled proceedings other than the allegation that each infant is a “ physically handicapped child” (Family Ct. Act, § 232, subd. [c]; Education Law, § 4401). It is further noted that in each of the above- *454 entitled proceedings written indication has been received from the Commissioner of Education that each child had previously been approved to attend an accredited educational facility, substantiating the existence in each of a handicapping condition, and that there is no adequate public facility for their educational instruction (Carl G. Anonymous, letter dated January 22,1974; Barry T. Anonymous, letter dated November 20, 1973; Education Law, §§ 4401, 4407); also, indicating a provision for the required moneys for each child’s requested tuition and maintenance costs, subject to an order of this court (Education Law, §§ 4403, 4407).
At the inception of each proceeding only the respondent, the City of White Plains, in each proceeding seeks to be dismissed as an interested party, since it disclaims any liability for the educable costs involved. It asserts that under the present existing statutory language of section 232 (subd. [a], par. [1]) of the Family Court Act and subdivision 2 of section 4403 of the Education Law when read in conjunction with subdivision 17 of section 2 of the Education Law, defining the term “ City ” under the Education Law, that the City of White Plains is not a “proper subdivision” under the Family Court Act nor “City” under the Education Law (§ 232, subd. [a], par. [1]; § 4403, subd. 2) intended by the Legislature to be responsible for or charged with the costs of the special educational training óf a physically handicapped child.
The issue, identical to each of these proceedings, is: what governmental locality was intended by the Legislature to be charged for the special educational needs of a handicapped child under the present statutory scheme!
This court has previously indicated that the statutory scheme “is to say the least, inarticulately developed ”. Other judicial commentaries in reviewing this statutory language have been most critical. In Matter of Daber (71 Misc 2d 303) it indicated the relationship of these laws as ‘ ‘ mumbo jumbo, unconsolidated and inartistieally promulgated ”. In Matter of Leitner (40 A D 2d 38, 42) Justice Shapiro stated: “ It may not be amiss to note that the statutory scheme for the ordering of special educational services for a handicapped child through the Family Court and the allocation of the costs of those services is, at best, cumbersome, and at worst, unclear and unnecessarily complex.”
Notwithstanding the repeated judicial pronouncements that the education of the handicapped child is an important, viable and pressing subject, requiring prompt legislative revision to clear doubts and ambiguities, correct any inconsistencies, fill *455 the gaps which may exist between the several statutes directly involved to achieve speedy solutions and mitigate, if not avoid the delay, despair and heartbreak encountered, it is still left to the courts, in each instance to ascribe a meaning to the statutory scheme involved in ascertaining the intent of the Legislature. Whatever positive results that have been achieved have only been accomplished after hardship, heartache, frustration, despair and anguish have been encountered by the parent of a “ physically handicapped child ” and the undue, unnecessary and in some instances, lengthy obstacles and delays, by repetitive litigation, advocate in nature, encountered in securing the desired and required special educational needs for this child because of the divergence between the public localities involved concerning which public locality is required to appropriate and expend funds for such special educational needs.
The issues raised before this court again require a review of the present statutory language to seek a pragmatic as well as a legally sound disposition of the instant motion to restrict litigiousness in permitting a party to appeal from one Judge to another of co-ordinate jurisdiction, by motion, for relief, but should require that his remedy be to a tribunal having appellate jurisdiction in the premises. The scholarly remark of the present Surrogate Midonick, when sitting as a Family Court Judge, in Matter of Reed v. Reed (63 Misc 2d 459, 460) is most applicable to the instant issue herein, wherein he states: “ there seems no expertise of legislative draftmanship equal to this vexed problem of procedure. My decision will probably be the subject of appeal no matter what the result or reasoning, and, if the appellate courts will clarify this basic lawyers’ problem, their help will be appreciated by Bench and Bar ”.
Under the existing statutory scheme a petition can be filed seeking an order of the Family Court for the expenditure of public funds to provide the special educational services for a handicapped child (§ 232, subd. [a], par. [1]). The application of section 4403 of the Education Law provides the means for reimbursement under the cost allocation basis therein to the governmental locality which shall pay for the services thereunder (§ 4403, subd. 1): “when not otherwise provided by parents, guardians, local authorities or by other sources, public or private ”, after the issuance of the Family Court order (§ 232, subd. [a], par. [1]) and upon the issuance of the certificate by the Commissioner of Education (§ 4403, subd. 1). Upon the issuance by the commissioner of such approval of the Family Court order made pursuant to section 232 of the Family Court Act then the *456 express provisions of subdivision 2 of section 4403 controls, not section 232 (subd. [a], par. [1]) (Matter of Leitner, 40 A D 2d 38, supra) though no explicit reference is made to either statute by the other. Section 4403 has the effect of requiring the county, in the first instance, to pay the cost of a child’s court-mandated special education, and the State thereafter to reimburse the county for one half that cost (p. 41) (cf. Education Law, § 4117 entitled “Payment of cost of education of1 physically handicapped Indian children ”).
An examination of the language of section 232 (subd. [a], par. [1]) indicates no statutory restriction placed upon the Family Court in the exercise of its jurisdiction in the issuance of an order to provide suitable education for a physically handicapped child (see Family Ct. Act, § 115, subd. [b]; § 232, subd. [a]). The Family Court determines that the child is a physically handicapped child as defined in subdivision (c) of section 232 of the Family Court Act, subdivision 1 of section 4401 of the Education Law, subdivision 1 of section 2581 of the Public Health Law; absent the approval issued by the Commissioner of Education and notwithstanding the absence of statutory reference as to who determines the condition. Logic and reason require this conclusion. The statutory reference to the certificate under section 232 (subd. [a], par. [1]) appears to be “permissive” to allow the court under certain circumstances to dispense with the necessity to have extensively clear and convincing medical proof (testimony) submitted as to the needs of the child. As stated, the issuance of the certificate by the Commissioner of Education is subsequent to and not prior to the issuance of the order by the Family ¡Court. A careful reading of section 232 (subd. [a], par. [1]) and subdivision 1 of section 4403 indicates that, upon the issuance of an order by the Family Court, absent the necessary approval by the commissioner (§ 4403, subd. 1), then the entire cost for such special educational needs is made under section 232 (subd. [a], par. [1]) of the Family Court Act (“ shall be a charge upon the county or the proper subdivision thereof ”) upon the local governmental authority (Matter of Leitner, supra). In this instance, the Family Court does not have jurisdiction to require the commissioner to issue an approval under subdivision 1 of section 4403 and then proceed to issue its order directing payment as prescribed under subdivision 2 of section 4403. Under these circumstances, with respect to determining which local governmental authority is to be charged with the financial responsibility for this special educational need, the Family Court is now empowered under section 255 (as amd. *457 by L. 1972, ch. 1016, § 3, eff. July 1,1972) to order the Commissioner of Education to render such assistance, information and co-operation as shall be within his legal authority concerning a child who is or shall be under its care, treatment, supervision or custody as may be required to further the objects of this act. This may include a direction that the commissioner inspect and certify “ the suitable institution ”, if it meets State standards, in assisting the court in ascertaining if the quality of the educational program is suitable to the required educational training needed for such child. If the certificate is then issued by the commissioner, it would make less burdensome the then existing financial obligation from a public authority (see Matter of James B., 75 Misc 2d 1012; Matter of Daber, 71 Misc 2d 303, supra; and Matter of Leitner, supra; cf. Matter of Naima C., 39 A D 2d 964; see Education Law, § 4402).
Mindful that the Constitution of the State of New York (art. XI, § 1) provides “ The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated ” (italics supplied) (see Education Law, § 3205, subd. 1, par. a), the right of a handicapped child to obtain the special educational needs for his education should not be limited to the willingness of a parent to become financially liable, nor hampered by repetitive litigation in determining responsibility for such costs.
This court must now proceed to ascertain the legislative intent of the statutory language (allocation) of subdivision 2 of section 4403, “ made a charge against the county or city ”, where the Commissioner of Education in the instant proceedings has indicated his approval for the cost of the necessary special education upon the issuance of an order by this court, within the present statutory scheme and within the purview of Matter of Leitner (supra). The language employed in a statute should be given a reasonable and sensible construction to carry out, if possible, the intention of the Legislature (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 94, p. 191), on the premise that all new laws are supposed to be enacted with knowledge on the part of the lawmakers of the existence and scope of the old law (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 222, pp. 384-385). In ascertaining the purpose and applicability of such enactments as an aid to its interpretation, this court will also review the notes of a statute, explanatory of its scope and purpose in conjunction with the text in interpreting the operative effect of the statute (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 123, subd. c, p. 250; §§ 124,125).
*458 The Legislature added to the definitions under section 2 of the Education Law, the term “ City ” (subd. 17; L. 1950, ch. 762, § 26, eff. July 1, 1951), defining the term “ City ” to mean, “ the city school district of such city where the context clearly so indicates.” The Legislature in the same session under the same chapter enacted article 51 of the Education Law (L. 1950, ch. 762, § 3, eff. July 1, 1951) and article 52 of the Education Law (L. 1950, ch. 762, § 22, eff. July 1, 1951). The extensive revision of the law as enacted was made possible by the constitutional amendment which on January 1, 1950, established separate real estate tax limits for city school districts in cities of less than 125,000 inhabitants (see note under L. 1950, ch. 762). (See N. Y. Const., art. VIII; Education Law, § 2701.) It was prepared under the direction of the State Comptroller’s Committee on Constitutional Tax and Debt Limits and City-School Fiscal Relations (see note under L. 1950, ch. 762) and was designed primarily to improve and clarify the provisions of the Education Law pertaining to city school districts in cities of less than 125,000 population, establishing city school districts as fiscally independent and fiscally responsible for the administration of education within their respective jurisdictions, which included all the cities in the State, except New York, Buffalo, Rochester, Syracuse, Yonkers and Albany (see Education Law, § 2550, as amd. by L. 1972, ch. 65, § 2, deleted “ Albany ” following “ Yonkers ”; see Matter of Corning v. Donohue, 29 N Y 2d 209, 213, affg. 37 A D 2d 213) wherein the then Chief Judge Ftjld stated “ the intent of the Legislature explicitly declared, that two classes of cities are provided for, one class consisting of the six cities, including Albany, named in section 2550, and the other class consisting of all other cities ”,
Specific provisions under article 51 make the legislative intent clear. Subdivision 3 of section 2503, concerning the management and control of educational affairs; paragraph a of subdivision 4, to establish and maintain free schools including schools for physically or mentally handicapped children; and sections 2515 to 2531, relating to its fiscal autonomy, clearly established such city school districts of a city with less than 125,000 population as fiscally independent and fiscally responsible for the administration of education within their respective jurisdictions. The Legislature also explicitly stated that the city school districts of a city with over 125,000 population (art. 52) were not fiscally independent and fiscally responsible, since their funds, moneys and appropriations are received and submitted similarly to those of other city departments, and the school *459 districts’ annual estimates of expenditure are subject to city review pursuant to section 2576 of the Education Law.
A further examination of the legislative enactment under the Education Law, dealing with the education of a physically handicapped child, places such obligation for such education upon the appropriate school district and the county, depending upon the circumstances. With reference to the board of education of each school district the following has been promulgated:
Section 4404 of the Education Law obligates the board of education of each city school district where there are 10 or more handicapped children who can be grouped homogeneously in the same classrooms for instructional purposes, to establish suitable educational facilities for such children. If there are less than 10 children the city school district has the power to furnish suitable educational facilities for such children, home teaching or transportation to school. Such city school district is also authorized and empowered to contract with the board of education of another school district, a board of co-operative educational services or a vocational education and extension board of a county for the education of such children in a special class organized in the schools of such district, of such board of co-operative educational services, or of such vocational education and extension board with which such contract is made.
Section 4405 of the Education Law involves State financial assistance to school districts providing instructional services to handicapped children (§ 4401).
Section 4406 of the Education Law explicitly grants the statutory power and mandate to each school district to establish special classes as may be necessary to provide instruction and training or to contract with the board of education of another school district, a board of co-operative educational services or a vocational education and extension board of a county for the instruction and’ training of such handicapped children.
Section 4407 of the Education Law is administrative in the statutory procedure outlined therein, and has no relation to the proceeding itself brought under 232 of the Family Court Act. It permits the State Education Department to contract with an educational facility within or without the State, absent an adequate public facility of instruction for a handicapped child within this State, to provide the special educational services for such child and pay up to $2,000 per child per year for such services, together with a proscribed formula of reimbursement from the school district for such expenditure.
*460 Section 1107 of the Education Law specifically deems a county vocational education and extension board to be a department of the county, financed by the county, having the power to provide certain educational services included by section 4404 of the Education Law (education of handicapped children), and, eligible for State aid (Education Law, § 1104).
Section 1110 of the Education Law authorizes and empowers Westchester County to create a special education district (subd. 1) and (under subd. 2) a county commission for special education; and, to establish schools or classes under subdivision 2 of section 1111 for physically handicapped children and to provide other necessary educational services, including transportation and home teaching, which are eligible for State aid (§ 1113) and financed by county appropriations from moneys collected through assessments, levy and collection of taxes at the same time and in the same manner as county taxes are assessed, levied and collected within the boundaries of such special education districts (§ 1114).
It appears to this court that the implementation of the legislative statutory mandates and prescribed statutory power and the administrative procedure involved in securing the required education of a physically handicapped child, within the expressed intent of the Legislature in securing certainty, efficiency and disentangled and effective education, fixes the financial obligation for such education upon the State, the county and appropriate school district, individually and collectively, depending upon the circumstances. The Legislature, in seeking to achieve this result, enacted articles 51 and 52 of the Education Law to excise the legal and administrative confusion in seeking to characterize the fiscal relationships between the governments and city school districts.
In seeking to obtain a logical, meaningful and practical application of the language employed under subdivision 2 of section 4403 of the Education Law to the cost allocation for this type of educational charge, which makes it a charge upon ‘ ‘ the county or city those words should be interpreted to recognize and to preserve the clear legislative language which distinguishes between cities and school districts in cities of less than 125,000 population and cities and school districts in cities of more than 125,000 population, under articles 51 and 52 of the Education Law, which this court deems not discriminatorily burdensome in light of the distinction thereunder between city school districts financially independent and financially responsible for the administration of education within their respective districts and those which are not, legislatively limited to “ five ”,
*461 Neither section involved in these proceedings under the present statutory scheme, section 232 of the Family Court Act and section 4403 of the Education Law, makes reference to each other (Matter of Leitner, 40 A D 2d 38, supra), though each specifically mention the “ county ” as a party against whom an order of the Family Court may be entered for the charges involved in the education of a physically handicapped child whether or not the Commissioner of Education has issued its approval. The terminology “ proper subdivision ” contained in section 232 does not appear in section 4403, nor contra, does the term “ city ” under section 4403 appear in section 232. Though these sections have been enacted at different times, they relate to the same subject matter. Though section 232 of the Family Court Act does not contain a similar reimbursement formula under the cost allocation provided for in subdivision 2 of section 4403, each must be considered with reference to the general system of laws of which it forms a part to have a unity of policy to be consistent in its several parts. This court concludes that these statutes are in pari materia, to be construed together to give uniformity of application and construction and applied harmoniously and consistently in the application to fix the fiscal obligation for the education of the handicapped child. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 222.)
In applying the foregoing discussion to the instant motions before this court, it concludes that under the present existing statutory scheme in carrying out fully the legislative intent with respect to determining the local authority intended by the statutory language under section 232 (subd. [a], par. [1]) of the Family Court Act, “ county or the proper subdivision thereof ”, and under subdivision 2 of section 4403 of the Education Law, “ county or city ”, that the costs for the special educational requirements of a physically handicapped child are to be a charge either against the county or school district in cities of less than 125,000 population or cities with 125,000 population or more in which any such handicapped child resides (the term “ besides ” being most often used in the Education Law; see article 65 of the Education Law, Compulsory Education) as expressly mandated by the Legislature under articles 51 and 52 of the Education Law.
Article 52 of the Education Law specifically limits its application to five cities only (§ 2550, as amd.), and no other city may be brought into or included within article 52 — except by specific legislation — no matter how large its population may become; and, by the same token, it cannot be removed from article 52 *462 and moved into article 51 without express legislative provision (Matter of Corning v. Donohue, 29 N Y 2d 209, 213, supra).
The cost involved for the special educational needs of each petitioner herein under the Family Court Act and the Education Law is not a charge against the respondent, City of White Plains.
The inarticulate draftsmanship which exists has resulted in a completely inadequate and clumsy tool to efficiently and expediously secure the prompt special educational needs for a handicapped child. At present a prompt resolution of this complex problem under the existing statutory scheme ultimately, of necessity, must be shaped by an appellate court decision on an individual case basis. The court again urges the Legislature that this matter requires study in depth and further resolution by a comprehensible overhaul of the existing statutory enactments. An immediate remedial legislative corrective step is to amend the statutory language to clearly express a workable interrelated statutory guideline explicitly indicating the local authorities to be charged for the cost of this education (Family Ct. Act, § 232 and Education Law, § 4403).
Guided by the appellate direction of Matter of Leitner (38 A D 2d 554), or until legislative revision, the branch of respondent’s motion seeking to be dismissed as an appropriate party is granted.