OPINION OF THE COURT
J. George Follett, J.
In these cases the Commissioner of Social Services of St. Lawrence County objects to probation supervision of a youth placed in the custody of the commissioner to live in a family foster care home pursuant to the provisions of part 5 of article 7 of the Family Court Act (§§ 751-760). Specifically, the commissioner argues that the provisions of sections 753 and 754 of the Family Court Act must be read in the disjunctive because of the word, “or” separating the last two provisions of subdivision 1 of each section, thereby precluding both probation and placement.
*27 A review of the history of the problem will place it in prospective. In January of 1969 an arrangement was negotiated between the St. Lawrence County Probation Department and the St. Lawrence County Department of Social Services whereby adolescent youths placed in the custody of the Commissioner of Social Services for family foster home care would be supervised by the probation service. Also at that time the probation service was to find suitable foster homes according to criteria furnished by the Department of Social Services who would then either approve or disapprove the homes as family foster care homes for article 7 children.
This arrangement was confirmed in a letter dated January 20, 1969, written by the court to Katherine Donovan, then head of Children’s Services for the Department of Social Services. A copy of that letter was received as exhibit 25 in Matter of Edward M. (76 Misc 2d 781) and the court will now take judicial notice of the letter in this proceeding. Shortly after the arrangement was made, it was. modified to the extent of returning the duty of finding foster homes to the Department of Social Services. (The court is informed by the Law Guardian that the issue now before the court was raised on appeal in Matter of Murcray, 45 AD2d 906. The Appellate Division affirmed without mentioning the argument in its decision.)
Although raised from time to time thereafter by the attorney for the commissioner, the objection was not pressed until the final disposition of Matter of Lorie C. (49 NY2d 161) by the Court of Appeals in January of this year. The objection is specifically raised in the two cases now before this court.
The argument of the commissioner cannot be sustained for the reason that he lacks standing to object to the order. The commissioner is a service provider to the court authorized and required by law to accept placement of article 7 children. The court is not in any way restricting or enlarging his duty under the law. It is expected that that agency will perform its duties and fully co-operate with other agencies also required by the court to provide services to the youth.
*28 The situation is analogous to that where the court places a youth on probation and also orders a mental health evaluation or treatment, drug treatment, family counseling or other services designed to resolve problems presented by the inappropriate behavior of the youth. Agencies are expected to co-ordinate their efforts to the end that there will no longer be a need for coercive intervention in the child’s life.
Also the objection of the commissioner cannot be sustained because his reliance on the conjunction “or” in the statute presents altogether too narrow a construction of legislative intent to be followed. Neither counsel in their briefs, nor search of the materials available to the court, support such a narrow intent. On the contrary, the whole statutory scheme of article 7 suggests a broader construction. As the Law Guardian points out, standard statutory construction favors reading the words “or” and the word “and” interchangeably if necessary in order to sustain legislative intent. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 365; Department of Welfare of City of N. Y. v Siebel, 6 NY2d 536.)
Section 711 of the Family Court Act specifically states that one of the purposes of the article is to “provide a due process of law * * * (b) for devising an appropriate order of disposition for any person adjudged a juvenile delinquent or person in need of supervision” (emphasis supplied). Great flexibility is needed in devising appropriate orders of disposition. That the Legislature was aware of the need for flexibility is apparent in the language of both part 6 of article 7 of the Family Court Act (§§ 761-768) relating to further hearings and part 7 (§§ 771-780) relating to compliance with orders. Furthermore, the Legislature gave the Family Court authority in section 255 of the Family Court Act to require the assistance and co-operation of auxiliary agencies in carrying out remedies fashioned to meet the needs of a particular child.
Also the need for the court to exercise flexibility in applying its discretionary authority at the dispositional phase of article 7 proceedings is supported by case law. (Matter of Jeanette P., 34 AD2d 661; Matter of Arlene H., 38 AD2d *29 570; Matter of Stanley M., 39 AD2d 746; Matter of Michael R., 70 AD2d 521.)
Nor does the decision of the Court of Appeals in Matter of Lorie C. (49 NY2d 161, supra), relied upon by the commissioner, compel a different conclusion. There the Court of Appeals addressed an attempt to order the probation service to provide exclusive supervision of probationers placed in the custody of the Department of Social Services. The Court of Appeals held that such an order was contrary to the statutory obligation imposed upon the Department of Social Services by section 398 of the Social Services Law. Here there is no attempt to order exclusive supervision by the probation service. Rather, what is intended is to bring another resource to bear upon the problems of a troubled youth.
Furthermore there are pragmatic reasons why placing a child both on probation and in the custody of the commissioner to live in a family foster home is indicated in certain cases. First the court must recognize that certain youths are more likely to respond to the supervision of a probation officer who by training and experience with adult offenders will more likely be able to effectively control and supervise the article-7 respondent. Although there are talented and perceptive caseworkers in the St. Lawrence County Department of Social Services, they nevertheless lack the day-today experience acquired by probation officers in dealing with persons within the criminal justice system to which the article 7 youth is akin.
Second, there are certain cases in which specific terms of probation are needed in order to set limits on the behavior of an article 7 youth. The statute and the Family Court rules specifically provide for terms and conditions of probation, the violation of which can result in the youth being returned to court for a further or different intervention in his life. No such similar statutory scheme is available when a youth is placed solely in the custody of the Commissioner of Social Services. If the position taken by the commissioner in this case were adopted then the dispositional flexibility of the court would be drastically reduced.
The third practical reason for both probation supervision *30 and custody in the commissioner is the need to retain continuity of services. Frequently a youth will be moved into or out of foster care depending upon the vagaries of his own behavior or the circumstances of his family. Probation supervision can lend continuity to services during breaks in foster care.
The fact that the court has the authority to order both agencies to provide services to an article 7 youth does not necessarily mean that the authority should be exercised in a given case.
Turning then to the specific cases before the court, Royal G. is a 15-year-old youth who was adjudicated a juvenile delinquent on May 17, 1979. At the dispositional hearing he was placed by the Surrogate for St. Lawrence County, acting as Family Court Judge in the custody of the commissioner, to live in a foster home as well as under the supervision of the St. Lawrence County Probation Department with specific terms and conditions of probation. On the petition for extension of placement now before the court, it was the recommendation of both the Probation Department and the Department of Social Services that placement of the youth be continued to the end of the current school year. At that time it was recommended that the youth be permitted to live with his father and his father’s paramour during the youth’s summer vacation from school. It was the intent and hope that if the youth made a satisfactory adjustment, he would not need to return to foster care at the commencement of the fall school term.
However the reports expressed reservations concerning this disposition due both to the possible problematic behavior of the youth and the questionable ability of the father to provide appropriate supervision. Nevertheless, the plan was adopted by the court.
At this point, the Department of Social Services objected to continued supervision by the St. Lawrence County Probation Department of a youth who was then still living in foster care.
This is a case where continuity of services seems essential for the rehabilitation of Royal G. as a functioning member of society. The approach of the commissioner in requesting *31 termination of probation supervision would cause a break in continuity should foster care also be terminated but further probation supervision needed as the facts seem to suggest. Such a hiatus in the continuity of services is not in the best interests of this young man considering the long involvement of probation in this case.
In the case of Pamela R. a different situation is presented. Here Pamela R. was voluntarily placed in foster care by her parents in 1979 and again in 1980. Although her placements were brief, her adjustment appeared wholly acceptable and she improved her functioning in school. However, apparently because of demands made by her mother, foster placement was terminated. She is now before the court at the dispositional phase of a PINS proceeding. The Probation Department recommends both foster care and Probation Department supervision.
Pamela R.’s recent behavior upon her return to her own home has been wholly unacceptable. It appears however, that much of her poor behavior is due to a conflict with her parents. Since the Department of Social Services successfully provided services to this young lady prior to the institution of the PINS petition and therefore is acquainted with her problems as well as the family dynamics, it seems particularly appropriate that that agency should continue the responsibility for rehabilitative efforts. Also, since probation’s involvement in the case has been limited to preparation of the dispositional report, little loss of continuity will be experienced should it appear at some future date that probation supervision is indicated. Furthermore, considering her good behavior when she was in foster care in the past, it does not seem likely that conditions of probation to set limits to her behavior will be required in the future.
Accordingly the recommendation of the Probation Department for probation supervision and placement of Royal G. is granted but the recommendation in regard to Pamela R. is denied.