431 A.2d 587 (1981)
In the Matter of J. J.
Appeal of Audrey ROWE.
No. 80-272.
District of Columbia Court of Appeals.
Argued September 29, 1980.
Decided May 28, 1981.
*588 Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington D.C., at the time the brief was filed, were on the brief, for appellant.
Gary S. Mininsohn, Rockville, Md., with whom Michael J. Eig, Washington, D.C., was on the brief, for appellee.
Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.
NEWMAN, Chief Judge:
This appeal raises the issue of whether the Family Division of the Superior Court has the authority to order a District of Columbia agency to pay for a specific treatment program for a delinquent juvenile, while the court retains custody of the juvenile on probation. J. J. is a delinquent child in need of special education. The trial court ordered that he be placed in a particular school appropriate to his needs. The trial court being uncertain of the impact of our decision in In re J.M.W., D.C.App., 411 A.2d 345 (1980),[1] refused to commit J. J. to the custody of the Department of Human Services (hereinafter DHS). Instead, the court placed J. J. on probation, and ordered Audrey Rowe, Commissioner of Social Services of DHS, to pay for his special schooling. Rowe refused the funds, asserting that she had no authority to pay for J. J.'s placement unless he was committed to the custody of DHS. The court held Commissioner Rowe in contempt for her refusal to comply with the order. She appeals.
*589 In Part I of this opinion we set forth the pertinent facts and proceedings below. In Part II we consider whether the court has the authority to order DHS to pay for the care of a juvenile on probation. We conclude that the Family Division does not have the authority that it asserted in this case. Accordingly, the court's order must be vacated.

I
On June 26, 1978, J. J. pled guilty to simple assault and was released to his mother pending disposition of his case. After a series of hearings over the following four months, the trial court determined that J. J. was delinquent, needed rehabilitation, and should be placed on probation. During the next fifteen months, J. J. was given diagnostic tests for learning disabilities and dyslexia so that he could be placed in an appropriate special education program. J. J. attended school only intermittently during this period.
On February 1, 1980, the trial court ordered that J. J. be placed in the New Dominion School in Dillwyn, Virginia.[2] While retaining J. J. on probation, the trial court ordered Commissioner Rowe to pay all of J. J.'s tuition and room and board expenses at New Dominion. She refused to pay, insisting that if J. J. remained on probation, the court had no authority to order the agency to provide special education.
On February 27, another hearing was held, at which the trial court explained the reasons for its order:
[P]rior to [J.M.W.] the Court could commit and the Court could follow through to make sure that the child was placed in a residence or educational setup that it wanted the child placed in.
* * * * * *
. . . [T]he Court placed [J. J.] on probation because the Court wanted to follow through and make sure that this placement was proper and if it turned out that it was not proper, the court would still have jurisdiction to monitor it and make another placement . . . .
* * * * * *
. . . I think I have an obligation to see that this child is properly placed, and if I commit him I'm taken out of the picture.
Following this hearing the trial court again ordered appellant to pay J. J.'s tuition and expenses at the New Dominion School, while J. J. remained on probation.[3] She refused to comply, and on March 19 the court held her in contempt and sentenced her to ninety days in jail.[4]
Suit was then brought in the United States District Court for the District of Columbia,[5] under the Education For All Handicapped Children Act of 1975, 20 U.S.C. §§ 1232, 1401, 1405-06, 1411-20, 1453 (1976), for an injunction ordering the D.C. Board of Education to place J. J. at New Dominion. After a hearing, the court granted a temporary restraining order on April 10, 1980, stating that irreparable injury would otherwise result because New Dominion could only hold J. J.'s space open until April 11, J. J. was placed at New Dominion, and on May 2, the district court issued a preliminary injunction to continue that placement. J. J. remains at New Dominion, at the Board of Education's expense.[6]

*590 II
We begin by examining the statutory definition of the court's authority here. The relevant dispositional alternatives available to the Family Division are as follows:
(c) If a child is found to be delinquent or in need of supervision, the Division may order any of the following dispositions for his supervision, care, and rehabilitation:
(1) Any disposition authorized by sub-section (a) . . . .
(2) Transfer of legal custody to a public agency for the care of delinquent children.
(3) Probation under such conditions and limitations as the Division may prescribe. [D.C. Code 1973, § 16-2320(c) (emphasis added).]
Subsection (a), referred to in subsection (c)(1) above, provides in turn:
(a) If a child is found to be neglected, the Division may order any of the following dispositions which will be in the best interest of the child:
* * * * * *
(5) The Division may make such other disposition as is not prohibited by law and as the Division deems to be in the best interests of the child. The Division shall have the authority to (i) order any public agency of the District of Columbia to provide any service the Division determines is needed and which is within such agency's legal authority. . . . [D.C. Code 1978 Supp., § 16-2320(a)(5) (emphasis added).]
As is indicated by the last phrase quoted above, the scope of the court's power over an agency is at least in part defined by the agency's own authority; the court cannot order an agency to act beyond the agency's own powers. Accordingly, we turn to the statutory provisions that help to define the agency's authority in cases such as this. The agency's responsibility to provide services for delinquent juveniles stems from D.C. Code 1973, § 3-120. This provision authorizes the judges of the Family Division,
at their discretion, to commit to the custody and care of the Board of Public Welfare . . . children under seventeen years of age who shall be convicted of petty crimes or misdemeanors . . .; and said Board of Public Welfare shall place, under contract, such children in such suitable homes, institutions or training schools for the care of children as it may deem wise and proper.[[7]]
The plain import of this statute is that the agency's duty to provide services arises concurrently with the transfer of legal custody. The Family Division is not required to commit juveniles to the custody of DHS. But unless the court does so, the agency will have no corresponding duty to pay for the child's care.
Our interpretation of § 3-120 is reinforced by the statutory definition of "legal custody" in the juvenile code:
The term "legal custody" means legal status created by [Family] Division order which vests in a custodian the responsibility for the custody of a minor which includes
(A) physical custody and the determination of where and with whom the minor shall live;
(B) the right and duty to protect, train, and discipline the minor; and

*591 (C) the responsibility to provide the minor with food, shelter, education, and ordinary medical care.
A Division order of "legal custody" is subordinate to the rights and responsibilities of the guardian of the person of the minor and any residual parental rights and responsibilities. [Id. § 16-2301(21).]
This provision clearly assumes that the agency has no obligation to provide services, unless and until the court vests legal custody of the child with that agency. And once custody is transferred, "the court relinquishe[s] its authority to determine the appropriate measures needed to insure rehabilitation. . . . [T]he agency . . . [has] exclusive supervisory responsibility over the juvenile . . . absent a fresh delinquency determination. . . ." In re J.M.W., supra at 349.
There is no reason for the Family Division to retain custody of the juvenile in the circumstances of this case, because the court has the power to order a specific placement for the juvenile as part of its commitment order. It is beyond dispute that DHS has the authority and the responsibility to contract with institutions in order to provide special services and treatment programs for juveniles who are under the agency's custody. See D.C. Code 1973, §§ 3-120, 16-2301(21).[8] As long as provision of the particular services is within the agency's legal authority, the Family Division may, by virtue of D.C. Code 1978 Supp., § 16-2320(a)(5)(i), order the agency to provide those services in its initial disposition order.[9] "The proposed language is intended to clarify that the Division may order specific dispositions and services that it deems to be in the best interests of the child so long as they are not beyond the legitimate authority of the agency . . . providing service in any particular case." Report of the Committee on the Judiciary of the Council of the District of Columbia, "Title IV of Bill No. 2-48, "The Prevention of Child Abuse and Neglect Act of 1977,'" at 20 (March 29, 1977) (emphasis added) [hereinafter cited as Judiciary Committee Report]. Moreover, in issuing its order, the Family Division must consider the recommendations of DHS. See In re C.W.M., D.C.App., 407 A.2d 617, 623-24 (1979); D.C. Code 1978 Supp., §§ 16-2319, -2320(f), including the agency's suggestions with respect to "specific services," and the "proposed providers" of those services, id. § 16-2319(c)(1)(B). It would make no sense to require the court to consider the agency's recommendations, and yet leave it powerless to implement them. To conclude otherwise would require a presumption that the statute requires the court to perform a useless actto read and evaluate a report that the judge is precluded from acting upon. See In re C.W.M., supra at 624.
The legislative history of the D.C. Juvenile Code provides additional guidance as to the allocation of authority between the Family Division and DHS. Section 16-2320(a)(5) was amended by the Prevention of Child Abuse and Neglect Act of 1977. The amendments to § 16-2320(a)(5) were modeled after § 255 of the New York Family Court Act.[10] Judiciary Committee Report, *592 supra at 20.[11] The relevant portion of the New York statute, for our purposes, is the second sentence,[12] which explicitly states that an agency is required to provide "information, assistance and cooperation" only for children who are "under its care, treatment, supervision or custody." N.Y. Fam.Ct.Act § 255 (McKinney 29A) (1977). The New York courts have reiterated the principle that the court's power to order services for juveniles is circumscribed by the authority of the agency. See In re Chrystol B., 104 Misc.2d 888, 893, 429 N.Y. S.2d 358, 361 (Fam.Ct.1980); Lorie C. v. St. Lawrence County Department of Social Services, 49 N.Y.2d 161, 168-69, 400 N.E.2d 336, 339, 424 N.Y.S.2d 395, 399 (1980).[13]
Recently, the New York Court of Appeals has had occasion to review the scope of authority granted to the courts by § 255. In Lorie C., supra, the court reversed a Family Court order that would have separated the responsibilities for custody and for supervision of certain delinquent children. The New York court held that such an order was beyond the authority granted by § 255 and that it "denigrates sic] from the functions allocated by the Legislature to the Department of Social Services," which should have been responsible for both custody and supervision. 49 N.Y.2d at 172, 400 N.E.2d at 341, 424 N.Y.S.2d at 401.
The doctrine of separation of powers, which underlies in part the New York decision in Lorie C. supra, 49 N.Y.2d at 170-71, 400 N.E.2d at 340-41, 424 N.Y.S.2d at 400-01, also lies behind our decision in J.M.W., and leads us to the conclusion we *593 reach here.[14] In In re J.M.W., supra, this court held that "once the [juvenile] was committed to the custody of the SRA [Social Rehabilitation Administration, a subdivision of DHS] the court relinquished its authority to determine the appropriate measures needed to insure rehabilitation. . . . [T]he agency, under the authority of the Mayor's Office, was given exclusive supervisory responsibility over the juvenile. . . ." 411 A.2d at 349. By retaining custody of J. J., the Family Division here sought to accomplish indirectly that which J.M.W. forbids. This attempt to circumvent J.M.W. is just as much an "impermissible encroachment upon the province of the executive" as was the J.M.W. order itself.[15]Id. The Family Division appropriated the custody and supervision functions of DHS, leaving the agency to do nothing more than pay the bills. In doing so, the court attempted to combine judicial and administrative roles that, under "our tripartite system of government," must be kept separate. Id. at 348. We are sympathetic, as was the trial court, to J. J.'s plight. But the court cannot simply usurp DHS's administrative authority, even if it is motivated solely by concern for J. J.'s welfare.[16]Cf. Bell v. Wolfish, 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979):
Judges, after all, are human. They, no less than others in our society, have a natural tendency to believe that their individual solutions to often intractable problems are better and more workable than those of the persons who are actually charged with and trained in the running of the particular institution under examination. But under the Constitution, the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan.
In sum, we conclude that the Family Division of the Superior Court has no authority to order a District of Columbia agency to pay for services for a juvenile offender on probation. We construe § 16-2320(a)(5)(i) to allow the Family Division to order services from an agency only pursuant to a transfer of "legal custody" to the agency. Since the Family Division exceeded its authority,
[t]he contempt order issued by the trial court in this case was void and could be disobeyed with impunity, for it is basic that ". . . a court does not possess the right or power to punish as for contempt a disregard or violation of its order or decree which it has rendered without . . . power or authority to render the particular decree or order."
* * * * * *
We would stress that it is no light matter to defy an order of court and that one does so at one's peril. However, when a court acts in excess of its authority in issuing an order, a refusal to obey that order is not punishable by contempt. [In re Banks, D.C.App., 306 A.2d 270, 273, 274 (1973) (quoting Annot., 12 A.L.R.2d 1059, 1067 (1950)).]
Reversed.
*594 KERN, Associate Judge, concurring:
I agree that the trial court exceeded its statutory authority under the particular circumstances of this case when it ordered the Department of Human Services (DHS) to pay for placement of the delinquent juvenile in a particular school for special educational training.
The Family Division of the Superior Court is authorized to "order any public agency of the District of Columbia to provide any service the Division determines is needed and which is within such agency's legal authority . . . ." D.C. Code 1978 Supp., § 16-2320(a)(5)(i) (emphasis added).[1] However, the "legal authority" of DHS to provide services for delinquent children is limited. According to D.C. Code 1973, § 3-120, DHS may place a child adjudged to be delinquent in "suitable homes, institutions or training schools" only if the Family Division has first committed the delinquent child to the agency's "custody and care." Since the trial court in the instant case did not give DHS custody of the juvenile, DHS did not have legal authority to pay for his schooling. Therefore, in the absence of some other statutory authority, it was beyond the power of the court to order DHS to take action which was not within the agency's legal authority, viz., payment for school for a delinquent juvenile not within the agency's legal custody.
Under the circumstances, the Commissioner was not in contempt for refusing to obey an order which the court was without authority to make. Hence, the judgment of contempt must be reversed.
NOTES
[1] In J.M.W., we held that "once the [juvenile] was committed to the custody of the SRA [Social Rehabilitation Administration, a subdivision of DHS,] the court relinquished its authority to determine the appropriate measures needed to insure rehabilitation . . . . [T]he agency, under the authority of the Mayor's Office, was given exclusive supervisory responsibility over the juvenile . . . ." 411 A.2d at 349.
[2] All parties had agreed upon this placement, and the school had accepted J. J.
[3] The order cited as authority D.C. Code 1973, §§ 16-2320(a)(5), -2320(c)(1), -2301; The Education For All Handicapped Children Act of 1975, 20 U.S.C. §§ 1232, 1401, 1405-06, 1411-20, 1453 (1976); and Mills v. Board of Education, 348 F.Supp. 866 (D.D.C. 1972). See note 16 infra.
[4] The contempt order was stayed by this court pending our decision. There is no question that at all times Commissioner Rowe was proceeding in good faith based upon her understanding of the limits of her legal authority.
[5] [J. J.], a minor by his mother and next friend Joyce Johnson v. D.C. Board of Education, (D.D.C., No. 80-0897, filed Apr. 8, 1980).
[6] We agree with the parties that the federal court's injunction does not render this appeal moot. The Family Division's contempt order remains unaffected by the federal district court's ruling, and DHS may ultimately be held responsible for some of J. J.'s expenses. Moreover, the issue presented by this case can be characterized as "capable of repetition, yet evading review." See Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); District of Columbia v. Washington Home Ownership Council, Inc., D.C.App., 415 A.2d 1349, 1350 n.3 (1980); Dobbs v. Neverson, D.C.App., 393 A.2d 147, 155 n.14 (1978). Given the importance of the child's welfare at this critical stage of development, as well as the long delays that typically accompany a judicial appeal, an injunction will often be sought in such cases. If a pending injunction were to prevent us from ruling on the question because of mootness, the issue would be likely to evade our review.
[7] The functions of the Board of Public Welfare have since been assumed by the Department of Human Resources (now Department of Human Services). See Note, "Transfer of Functions," D.C. Code 1973, § 3-102.
[8] When the court does not designate a particular placement in its commitment order, the choice of an appropriate placement is properly within the agency's discretion, pursuant to D.C. Code 1973, § 3-120. The statute does not, however, place any limitations on the court's power to select a placement if it desires to do so.
[9] See generally In re C.W.M., D.C.App., 407 A.2d 617, 624 n.16 (1979) ("The Division has broad discretion to order the treatment it deems to be in the child's best interest"). Our decision in In re J.M.W., supra, is in no way inconsistent with the court's authority to specify a particular placement in its disposition order. For in J.M.W. we held only that a court is without power to intervene after commitment to an agency. We said nothing about the court's powers to act as an integral part of the commitment process. In J.M.W., the court was, in effect, attempting to revoke the "parole" of a juvenile, a function that is administrative or executive in nature. See In re J.M.W., supra at 348. Here, by contrast, the designation of a particular placement in a commitment order is within the judicial function, as defined by statute. D.C. Code 1978 Supp., § 16-2320(a)(5)(i).
[10] The New York statute provides:

It is hereby made the duty of and the family court or a Judge thereof may order, any state, county and municipal officer and employee to render such assistance and cooperation as shall be within his legal authority, as may be required, to further the objects of this act. It is hereby made the duty of and the family court or judge thereof may order, any agency or other institution to render such information, assistance and cooperation as shall be within its legal authority concerning a child who is or shall be under its care, treatment, supervision or custody as may be required to further the objects of this act. The court is authorized to seek the cooperation of, and may use, within its authorized appropriation therefor, the services of all societies or organizations, public or private, having for their object the protection or aid of children or families, including family counseling services, to the end that the court may be assisted in every reasonable way to give the children and families within its jurisdiction such care, protection and assistance as will best enhance their welfare. [N.Y. Fam. Ct.Act § 255 (McKinney 29A) (1977) (emphasis added).]
This section was amended in 1977 to provide that school districts may not be directly ordered to provide specific services or programs unless there is no administrative procedure available to obtain such services. See id. (Supp. 1980).
[11] Appellant relies upon another statement in the same report to argue that the enhanced authority conferred upon the Family Division by the 1977 amendments to § 16-2320(a)(5) "affect[s] the disposition of neglected children only." Judiciary Committee Report, supra at 20. But although this statement in the report creates some confusion as to the effect of the amendments, the statutory language itself is unambiguous; the cross-reference from subsection (c)(1) (delinquency options) to subsection (a) (neglect options) remains. Thus, this single sentence in the committee report simply does not merit any weight. In the absence of an express restriction in the statutory language, the amended section must be construed to have the same scope as the unaltered sections of the original statute. See Chase v. United States, 7 App.D.C. 149, 156 (1895); 1A C. D. Sands, Statutes and Statutory Construction § 22.35, at 197 (4th ed. 1972). See also id. § 22.35, at 198 n.6: "[I]f one section of an act or code incorporates by reference the provisions of another section of the same act or code, a subsequent amendment of the latter is regarded as affecting the whole act or code, including the section incorporating the section amended by reference." (Citations omitted.)
[12] The three sentences of § 255 each govern separate and distinct situations Lorie C. v. St. Lawrence County Dep't of Social Services, 49 N.Y.2d 161, 168, 400 N.E.2d 336, 339, 424 N.Y. S.2d 395, 399 (1980).
[13] Although § 255 has been invoked as authority for ordering special education services, this has only been done when the agency receives custody of the juvenile. See, e. g., In re Kaye, 54 A.D.2d 907, 908, 388 N.Y.S.2d 620, 622 (1976); In re Carl G. Anonymous, 78 Misc.2d 453, 456, 357 N.Y.S.2d 959, 964 (Fam.Ct.1974); In re James B., 75 Misc.2d 1012, 1017, 349 N.Y.S.2d 492, 498 (Fam.Ct.1973). These cases were decided before the 1977 amendment to § 255, however. See note 10 supra.
[14] In re Royal G., 106 Misc.2d 26, 431 N.Y.S.2d 278 (Fam.Ct.1980), is not to the contrary. Although the Family Court issued a disposition order combining probation and placement, the court itself did not retain custody of the juvenile, but transferred custody to the Commissioner of Social Services.
[15] Though J.M.W. did not address the specific issue raised here, and the opinion explicitly limited its scope to the "narrow issue" presented in the case, 411 A.2d at 349 n.4, the same statutory provisions are at issue in this case (D.C. Code 1978 Supp., § 16-2320(a)(5), (c)), thus making even the narrow holding relevant, as defined by J.M.W.'s footnote 4.
[16] Despite appellee's arguments to the contrary, The Education For All Handicapped Children Act, supra, and Mills v. Board of Education, supra, are not relevant to the issue before us. Nobody is disputing J. J.'s right to a special education. Although the trial court relied upon Mills and the federal statute, see note 3 supra, Mills neither provides authority for, nor constitutes an example of, the type of order that the court attempted to impose in this case. The court in Mills retained jurisdiction for the purpose of "implementation, modification and enforcement" of its order, 348 F.Supp. at 883; it did not retain legal custody of each individual child, as the trial court here attempted to do in the form of "probation."
[1] The optional dispositions of § 16-2320(a)(5), which deal with neglected children, are made available to the Family Division for resolving cases of children found to be delinquent or in need of supervision by D.C. Code 1973, § 16-2320(c).