**John A. WILSON, Chairman, Council of the District of Columbia, Appellant,**

v.

**Sharon Pratt KELLY, Mayor, District of Columbia, Appellee.**

**No. 91–CV–1420.**

District of Columbia Court of Appeals.

Argued June 18, 1992.

Decided Oct. 20, 1992.

Patricia S. Baars, with whom Charlotte M. Brookins was on the brief, for appellant.

Charles L. Reischel, Deputy Corp. Counsel, with whom John Payton, Corp. Counsel, was on the brief, for appellee.

Before TERRY, STEADMAN and WAGNER, Associate Judges.

STEADMAN, Associate Judge:

Section 412 of Title IV (the "District Charter") of the District of Columbia Self–Government and Governmental Reorganization Act, as amended,[1] grants to the Council of the District of Columbia (the "Council") limited power through the use of resolutions to approve or disapprove certain proposed actions of the Mayor and other District governmental entities. Specifically, as pertinent to the matter now before us, section 412, as amended and codified in D.C.Code § 1–229 (1992),[2] provides:

> (a) The Council, to discharge the powers and duties imposed herein, shall pass acts and adopt resolutions.... Resolutions shall be used ... (2) to approve or disapprove proposed actions of a kind historically or traditionally transmitted by the Mayor ... to the Council pursuant to an act.

In late 1990, the Council added a new provision to the Procurement Practices Act of 1985, which was to become codified as D.C.Code § 1–1181.5a. As subsequently amended by emergency legislation,[3] that section specified that "no contract for goods or services worth over $1,000,000 may be awarded until after the Council has approved the proposed contract award" as

---

1. The Act was originally adopted as Pub.L. No. 93–198, 87 Stat. 774 (1973). The Act, as it has been amended from time to time, is codified in various sections of the D.C.Code. As its preamble states, Title IV of the Act establishes the fundamental "means of governance of the District," D.C.Code § 1–203 (1992), and in the Act itself is entitled "The District Charter."

2. The key amendment to section 412 relevant to the controversy before us was made by Congress in 1984 by the addition of subsection (2). Pub.L. No. 98–473, 98 Stat. 183. The preamendment version provided in relevant part only that "[r]esolutions shall be used to express simple determinations, decisions, or directions of the Council of a special or temporary character." That provision came to be subsection (a)(1) in the amended version.

3. The original enactment (preceded by emergency legislation) was amended by the "District of Columbia Procurement Practices Act of 1985 Council Contract Approval Procedures Emergency Amendment Act of 1991," effective October 15, 1991. 38 D.C.R. 6458 (1991). Subsequently, the Council passed temporary and permanent legislation, which mirrored the emergency act. The permanent act contained an additional provision which states that the Council may disapprove a contract by passage of an act as well as by resolution. 39 D.C.R. 4083 (1992). The trial court had before it only the original enactment and the emergency amendment of October 15, 1991, and we accordingly confine our consideration to those enactments. See note 9 *infra*.

provided therein.[4] Prior to award, the Mayor was to submit the proposed contract to the Council. Any three members of the Council might file an objection to a proposed contract, after which the Council could vote to approve or disapprove the contract by resolution. If no objection was made to a contract within seven days, or if an objection was made and no resolution of disapproval adopted within twenty-one days, the contract was automatically deemed to be approved.

In litigation between appellant John A. Wilson, Chairman of the Council (the "Chairman"), and appellee Sharon Pratt Kelly, the Mayor of the District of Columbia (the "Mayor"),[5] the trial court ruled that the provisions of section 1–1181.5a exceeded the Council's resolution authority under section 412(a) of the Charter, D.C.Code § 1–229 (1992). We agree with this ruling of the trial court and accordingly affirm.

**A**

We begin with recognition of the fact that the government of the District of Columbia is the creation of Congress, pursuant to the U.S. Constitution.[6] In structuring that government, Congress is not bound by the separation of powers limitations that control its powers at the national level. *See, e.g., Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 76, 102 S.Ct. 2858, 2874, 73 L.Ed.2d 598 (1982); *Palmore v. United States,* 411 U.S. 389, 397–98, 93 S.Ct. 1670, 1676–77, 36 L.Ed.2d 342 (1973); *National Mutual Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 590–92, 69 S.Ct. 1173, 1176–78, 93 L.Ed. 1556 (1949). Nonetheless, in the District Charter, Congress chose to create, as a general proposition, the familiar tripartite structure of government for the District. By specific language, "the legislative power granted to the District by this Act is vested in and shall be exercised by the Council in accordance with this Act," D.C.Code § 1–227 (1992); "[t]he executive power of the District shall be vested in the Mayor," D.C.Code § 1–242 (1992); and "[t]he judicial power of the District is vested in the District of Columbia Court of Appeals and the Superior Court of the District of Columbia." D.C.Code tit. 11 app. § 431(a) (1989). Indeed, by its own statutory enactment, the Council has explicitly declared that it "recognizes the principle of separation of powers in the structure of the District of Columbia government." D.C.Code § 1–227.1(b) (1992).

While always giving due recognition to differences between a national constitution and the governance of a single urban component, it is reasonable to infer from this tripartite structure and the vesting of the respective "power" in each branch that the same general principles should govern the exercise of such power in the District Charter as are applicable to the three branches of government at the federal level.[7] Congress could reasonably intend that absent contrary provision drawn either expressly or by implication from the Self–Government Act or other statutes, its "legislative" power as delegated to the Council would reflect its "legislative" power vis-a-vis the

---

**4.** Exceptions were provided for contracts awarded by competitive sealed bidding and those implementing a federal program where federal law governs contracting procedures.

**5.** The Chairman initially filed suit seeking to enjoin the Mayor from entering into and implementing contracts without complying with § 1–1181.5a as originally enacted. The Mayor counterclaimed, seeking a declaratory judgment that the requirement was invalid; in response, the Chairman sought a declaration of its validity. Upon passage of the subsequent emergency amendments, see note 3 *supra,* the Mayor amended her counterclaim to challenge the amended law. The Chairman thereupon withdrew his complaint and the case was decided on the basis of the amended counterclaim.

**6.** "Congress shall have Power ... To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may ... become the Seat of the Government of the United States...." U.S. Const. art. I, § 8.

**7.** *Cf. Hessey v. Burden,* 584 A.2d 1 (D.C.1990); *Convention Ctr. Referendum Comm. v. District of Columbia Bd. of Elections & Ethics,* 441 A.2d 889 (D.C.1981) (en banc); *In re J.J.,* 431 A.2d 587 (D.C.1981).

other branches of government at the national level.[8]

In *Immigration and Naturalization Service v. Chadba,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), the Supreme Court struck down a federal statutory provision for congressional veto of executive decisions as violative of the constitutional separation of powers. It was in response to the understandable concern created by this decision as to existing practices in the District that the Congress in 1984 amended section 412(a) of the District Charter by adding subsection (2) to authorize the Council to use resolutions "to approve or disapprove actions of a kind historically or traditionally transmitted by the Mayor ... to the Council pursuant to an act." The heart of this appeal is the question whether individual procurement contracting decisions of the executive branch may be considered "actions of a kind historically or traditionally transmitted by the Mayor ... to the Council pursuant to an act." [9]

**B**

In enacting the 1984 amendment, Congress undertook to authorize the Council in certain circumstances to do by resolution what the Congress itself could not do in its capacity as a national legislature. *Cf. Gary v. United States,* 499 A.2d 815, 818–821 (D.C.1985) (en banc), *cert. denied,* 475 U.S. 1086, 106 S.Ct. 1470, 89 L.Ed.2d 725 and 477 U.S. 906, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986). The plain connotation of language focused on actions of a kind "historically or traditionally" followed is a concern with maintenance of existing prac-

tices and preservation of the mechanisms of Council power in relation to the executive branch of the District government that existed pre-*Chadha.*

Likewise, the legislative history of the amendment indicates that the primary intent in its enactment was to preserve the general status quo in District governance. As David A. Clarke, then Council chairman and one of the chief participants, along with then Mayor Marion Barry, Jr., in consideration of the amendment, explained, "the purpose and effect of [subsection 412(a)(2) ] is to clarify the effect of *Chadha* upon the operation of the Home Rule Act by maintaining the current procedures, and ... there is no purpose to further expand the role of the Council." *Home Rule Act Amendment: Hearing on S. 1858 Before the Subcomm. on Governmental Efficiency and the District of Columbia of the Senate Comm. on Governmental Affairs,* 98th Cong., 1st Sess. 22–23 (1983).[10] Through its explicit imprimatur on the status quo, Congress sought to preempt any *Chadha*-based challenges to the District's existing practices of governance.

**C**

■ Appellant nonetheless urges an expansive reading of the provision, stressing the phrase "of a kind" modifying "actions." Legislative history supplies a gloss to that phrase also. Mayor Barry and Chairman Clarke submitted to Congress a joint letter supplementing the testimony and explicating the language of the provision, which apparently reflected a compromise between

---

**8.** Appellant points out that at the time of the enactment of the Self–Government Act, Congress engaged in individual contract review and therefore could have contemplated that the Council might do likewise. We think a more reasonable and workable interpretation to be that separation of powers principles should govern as they may be authoritatively pronounced by the Supreme Court from time to time. This is particularly the case where, as here, Congress has subsequently responded to such a pronouncement by enactment of a statutory amendment.

**9.** We understand appellant to stress section 412(a)(2) of the District Charter in defense of

the legislation, with its provision for disapproval by resolution, ruled upon by the trial court and under review here. We do not here consider the scope of the Council's power to utilize acts for this purpose. See note 3 *supra. Cf., e.g., Hessey v. Burden, supra; Convention Ctr. Referendum Comm. v. Bd. of Elections and Ethics, supra.* Acts, unlike resolutions, are subject to mayoral review and submission to the congressional review period. D.C.Code §§ 1–227(e), 233(c) (1992).

**10.** Chairman Clarke further underscored in his testimony that the "effect of this section is not to create a radical departure." *Id.* at 25.

the Mayor and the Council. In relevant part, the letter stated:

> The language "of a kind historically or traditionally" is designed to reference a conception of the current uses of Council approval or disapproval by resolution as exemplary of the kinds of approval or disapproval to be specifically permitted by the Charter. The language would include within the ambit of the provision those actions which are now approved or disapproved by Council resolution but is not meant to cover only those specific actions. We attached a list of current provisions of law which involve approval or disapproval by resolution as exemplary of the kinds of review contemplated by the compromise language.

*Id.* 98th Cong., 2d. Sess., pt. 2, at 9 (1984). Appended to the letter was a list of 32 exemplary statutes containing Council review provisions.[11] The trial court was thus quite correct to conclude that the appropriate test for any act purporting to authorize the Council to use its resolution power to review the Mayor's decisions is whether that act is sufficiently analogous to the exemplars on the list of statutes with respect to "the kinds of review contemplated."

The 32 exemplary statutes are of considerable variety and extent. We do not attempt to develop overarching groupings or characteristics of these statutes for purposes of giving full definition to the phrase "of a kind." The guiding principle we draw from the above considerations is that when doubt exists, we must apply a restrained interpretation to the resolution approval power, given both its existence as an exception to the otherwise applicable separation of powers principles inherent in the District Charter and the intent that its exercise find roots in the historical and traditional status quo.

Thus, at the very least, a statute to be "of a kind" with one on the list should operate in a significantly analogous way in the same discrete field of District governance. The area of government contracting is indisputably such a discrete field, having its own comprehensive governing

---

11. The attachment to the letter listed the statutes as follows:

STATUTES WITH COUNCIL REVIEW PROVISIONS

P.L. 97–257—Transfer of appropriated funds.
D.C.Code § 1–242(12)—Reorganization Plans.
D.C.Code § 1–608.1(e)(3)—Exemptions from Residency Requirements.
D.C.Code § 1–612.6—Career and Expected Service Pay Package.
D.C.Code § 1–612.7(d)—Executive Service Pay Rates.
D.C.Code § 1–612.8(b)—Boards and Commissions Compensation.
D.C.Code § 1–612.11—Educational Service Pay Package.
D.C.Code § 1–618.17(j)—Labors Relations Settlements.
D.C.Code § 1–633.7—Confirm Executive Service Nominees.
D.C.Code § 1–1150.1—Minority Contract Rules.
D.C.Code § 3–207.3—Public Assistance Complements.
D.C.Code § 4–301—Major Changes in Fire Department.
D.C.Code § 5–504 note—Construction Codes Adoption.
D.C.Code § 5–806(c)(1)—Urban Renewal Property Offering Documents.
D.C.Code § 5–811—Urban Renewal Plan Changes.
D.C.Code § 5–818(b)—Advance Funds for Urban Renewal Projects.

D.C.Code § 5–902(c)—Community Development Program and Amendments.
D.C.Code § 9–603(c)—Convention Center Board Rules.
D.C.Code § 24–442—Corrections Dept. Regs. for Penal Institutions.
D.C.Code § 33–511(b)—Schedule of Controlled Substances.
D.C.Code § 36–702(f)—Youth Employment Act Regulations.
D.C.Code § 40–605(a)(1)—Mayor's Order to Modify Civil Traffic Fines.
D.C.Code § 43–1806(c)—Cable TV Rules.
D.C.Code § 45–1924(g)—Real Estate Licensure Regulations.
D.C.Code § 45–2204(a)—Home Purchase Assistance Fund Rules.
D.C.Code § 46–114(b)—Unemployment Compensation Bd. Regs.
D.C.Code § 47–308—Annual Budget Structure Resolution.
D.C.Code § 47–309—Borrowing Funds from U.S. Treasury.
D.C.Code § 47–363(e)—Reprogramming Requests.
D.C.Code § 47–364(a)—Non-Offsetting Budget Modifications.
D.C.Code § 47–385—Grant Applications and State Plan Approvals.
18 DCMR 2412.8—Residential Permit Parking.

statute, to which the challenged section is an amendment. Yet an examination of the list of 32 statutes reveals only one which even arguably could be placed in that category, *viz.*, D.C.Code § 1–1150.1 (1992).[12] That section requires that rules adopted by the Minority Business Opportunity Commission in the area of minority contracting lie before the Council for a 45–day period, within which the Council may approve or disapprove the rules. The promulgation of rules by agencies to implement statutes is of course a widely-recognized delegation of legislative power. Such rules, regulations, and guidelines are procedural in nature, fundamentally distinct from specific contract award decisions. Their review bears little resemblance to the oversight of individualized contract awards in the broad range of procurement challenged here.

Appellant argues that review of individualized contracts is simply one form of a broader control that may be asserted by the Council over executive actions that have substantial financial implications. Appellant notes that the exemplary statutes thus can be grouped into the areas of the employment of personnel, contracting for programs with the federal government, and borrowing money.[13] Each of these areas, however, is conceptually quite distinct from the traditional field of government procurement of goods and services from private bidders. If any decision of the executive branch having fiscal implications is found to be encompassed within the resolution power, the exception will swallow up the rule. We do not think that the phrase "of a kind" can be interpreted at such a high level of generality.

▪ In sum, we can find no basis to hold that the Council has been empowered by section 412 of the District Charter to erect its own mechanism of individualized contract review by use of its resolution authority. Accordingly, the order of the trial court must be

*Affirmed.*

---

12. Appellant suggests that the category should be more widely designated as the "sale or purchase of property or services," and that as so defined it includes two additional statutes. Section 5–806(c)(1) (1988), however, has to do with the disposition of urban renewal property by the Redevelopment Land Agency, and section 43–1806(c) (1990) with Council approval of rules issued by the Office of Cable Television. Neither could be deemed to be a government procurement matter as generally understood or to fit comfortably even in the wider category.

13. These are in addition to the fourth grouping advocated by appellant. *See supra* note 12.