411 A.2d 345 (1980)
In the Matter of J. M. W., Appellant.
No. 13898.
District of Columbia Court of Appeals.
Argued September 25, 1979.
Decided January 10, 1980.
As Amended April 9, 1980.
*346 Michael B. Waitzkin, Public Defender Service, Washington, D.C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D.C., was on the brief, for appellant.
Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Louis P. Robbins, Principal Deputy Corp. Counsel, Washington, D.C., when the brief was filed, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee.
Before NEWMAN, Chief Judge, and HARRIS and MACK, Associate Judges.
PER CURIAM:
Appellant, a juvenile, seeks review of an order granting Corporation Counsel's motion for revocation of his aftercare status for two violations of a curfew imposed by his social worker at the Social Rehabilitation Administration (hereinafter SRA). The ultimate issue, one of first impression, presented by this case is whether or not the court had jurisdiction to issue the order pertaining to appellant's aftercare status. Appellee maintains that since the appellant had been previously adjudicated a delinquent, the Family Division, acting as parens patriae and in the best interest of the juvenile, retained authority to execute such an order. We disagree. We find that in the absence of a specific legislative mandate providing for the alteration of a disposition, the court is without jurisdiction to modify a commitment order.
Aftercare is a program established by the SRA under which juveniles who have been committed to its legal custody are placed back in the community under the supervision of a trained social worker. Although the term "aftercare" is not mentioned in the statute or Superior Court Rules, the legal authority for the program is unchallenged. D.C.Code 1973, § 16-2320(c)(2), empowers the court to transfer legal custody of a juvenile to a public agency when it finds that the child has engaged in criminal conduct and is in need of care and rehabilitation. In the District of Columbia, the SRA is the agency designated to provide such care. Under a formula established by the SRA, a juvenile is placed in the aftercare program after a prescribed period of time and remains there, assuming continued progress, until the expiration of his commitment. In light of the present case, this court must consider whether or not the Family Division has the authority to order a juvenile recommitted subsequent to a transfer of legal custody to the Social Rehabilitation Administration and a determination by that agency that the juvenile should be placed in the aftercare program.

I
On March 21, 1978, appellant, J. M. W., was arrested and charged with burglary in the second degree and grand larceny. At the time of this arrest, appellant was on aftercare subsequent to an earlier conviction for burglary and grand larceny. Approximately a month after the arrest, appellant entered a plea of guilty to receiving stolen property before Judge Block. The burglary and grand larceny charges were dismissed. Judge Pratt, on June 6, ordered the appellant to be "committed to the custody of Social Rehabilitation Administration... for an indeterminate period not to exceed two years ... [with] release into immediate aftercare status," thereby in effect continuing the aftercare status in which he already had been placed. The judge placed no conditions or qualifications *347 on this disposition. The SRA thereupon released appellant from the Children's Center and placed him back in the aftercare program.
On July 31, 1978, appellant was arrested in connection with a robbery that occurred on July 7, 1978, subsequent to some homosexual activity between the victim and perpetrator of the offense. In August 1978, the District of Columbia, through the Corporation Counsel, filed a motion in the Family Division requesting the court to revoke the appellant's aftercare status on the basis of two curfew violations, and the commission of a homosexual act for money. The Corporation Counsel followed this course since SRA apparently declined to remove respondent from aftercare status. Shortly thereafter, Judge Murphy held an evidentiary hearing on the motion. At the hearing, Judge Murphy received testimony from three police officers and the appellant's social worker. The social worker opposed the motion and stated that she wished the appellant to remain in the community under her supervision. On July 31, 1978, after considering the testimony and argument of counsel, Judge Murphy found that the appellant had twice violated his curfew restrictions, but made no finding as to whether any crimes had been committed. On that basis, Judge Murphy revoked appellant's aftercare status and remanded him to the custody of the SRA and directed placement at Oak Hill.[1]
At the hearing, appellant contested the court's authority to revoke his aftercare status. Specifically, appellant contended that if aftercare was the legal equivalent of probation the court was without authority to act since the District had not complied with the statutory and decisional law governing probation. Alternatively, appellant argued that if aftercare was construed to be analogous to parole, the court was also without jurisdiction to entertain the motion. The court determined that the proceeding was not a probation revocation hearing and assumed that it had jurisdiction to revoke the appellant's aftercare status. In a brief written order Judge Murphy concluded that "[a]ftercare status is not the same as probationary status," and therefore the requirements of the rules and the statute do not apply. "If anything, [a]ftercare resembles parole." The court did not directly consider whether it had jurisdictional authority over parole revocation-type proceedings.

II
It is generally well established that a court is without authority to suspend or impose a sentence of a nature or in a manner not specified by statute. Schwasta v. United States, D.C.App., 392 A.2d 1071, 1077 (1978), citing Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916). Consistent with this limitation, at common law a court's power over its judgments usually expires with the term of the court, see United States v. Smith, 331 U.S. 469, 473, 67 S.Ct. 1330, 1332, 91 L.Ed. 1610 (1947), or upon commencement of the execution of the sentence. United States v. Murray, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928); King v. United States, 69 App.D.C. 10, 98 F.2d 291 (1938). As a result, the judiciary is frequently without power to modify, review, or alter a sentence, regardless of a change in circumstances, once it becomes final.[2]
D.C.Code 1978 Supp., §§ 16-2301 to -2338, sets forth the dispositional alternatives available to the Family Division and the methods by which these sentences may be modified or terminated subsequent to their imposition. D.C.Code 1973, § 16-2320(c), specifically provides (when read in conjunction with § 16-2320(a)) that "[i]f a *348 child is found to be delinquent or in need of supervision, the Division may": (1) place him on probation; (2) commit him to the legal custody of a public or private agency authorized to care for the delinquent child; (3) commit him for medical, psychiatric or other treatment at an appropriate facility; (4) place him with a relative or other qualified person; or (5) "[m]ake such other disposition as may be provided by law .. [and deemed] to be in the best interests of the child and the community." D.C.Code 1973, § 16-2320(a)(5). Furthermore, D.C. Code 1978 Supp., § 16-2327, titled "Probation revocation; disposition," confers upon the court authority to modify or revoke probation upon a motion from the Corporation Counsel. No such provision allowing the ongoing involvement of the court, however, is provided in commitment cases. Instead, the statute grants to the agency to which legal custody has been transferred, the power to designate residence, supervise programs, and authorize release, D.C.Code 1973, §§ 16-2301(21), -2322(a), while making no mention of the court's power to scrutinize or review these decisions.[3] Thus, while the court is specifically granted authority to modify or revoke a dispositional order placing a juvenile on probation, the court is without statutory power to intervene after commitment. In the absence of such an express grant, we find that the court was without authority to revoke petitioner's aftercare status and order his placement at Oak Hill.
In this case, it is self-evident that the appellant was not on probation when Judge Murphy revoked his aftercare status. Not only did Judge Murphy acknowledge this fact, but Judge Pratt's disposition order of June 6 clearly indicates that appellant was committed to the custody of the SRA. As such, it can only be concluded that the statutory provisions regarding probation revocation are inapplicable to this case.
Appellee argues that although there is no specific statutory authority allowing modification of a commitment order, the court has inherent authority by virtue of the doctrine of parens patriae and the general jurisdictional grant of D.C.Code 1973, § 16-2303, which provides:
For purposes of this subchapter, jurisdiction obtained by the Division in the case of a child shall be retained by it until the child becomes twenty one years of age, unless jurisdiction is terminated before that time.
We, however, find this argument unpersuasive. Although this provision clearly allows the court to retain continuing jurisdiction over a juvenile until he reaches the age of majority, it should not be interpreted to be a grant which allows the court to exercise its authority in a manner which is inconsistent with or broader than statutory mandate. To hold that this section provides for judicial modification of a commitment order would extend the powers of the court far beyond that which is expressly delegated by statute.
A statutory structure which confers upon the court the authority to revoke probation, but not to modify a commitment order is entirely consistent with our tripartite system of government. Traditionally, within the criminal system, it has been considered that "the right to try offenses ... and ... to impose the punishment... is judicial [while] ... the right to relieve from punishment ... belongs to the executive department." Ex parte United States, supra, 242 U.S. at 41-42, 37 S.Ct. at 74. As a result since "[p]robation proper relates to action taken before the prison door is closed", 21 Am.Jur. Criminal Law § 562, at 532 (1965), judicial revocation or modification may be accomplished without consultation or interference with the executive branch. In contrast, since parole occurs only after the sentence has begun to be served and the judiciary has transferred its supervisory authority to the *349 executive branch, an alteration of parole status must necessarily involve the executive branch. To allow the judiciary to revoke parole without regard to the assessment of those who retain custody would therefore permit an impermissible encroachment upon the province of the executive.
In this case it is clear that once the appellant was committed to the custody of the SRA the court relinquished its authority to determine the appropriate measures needed to insure rehabilitation. D.C.Code 1973, §§ 16-2301(21), -2322(a). As a result, we conclude that the agency, under the authority of the Mayor's Office, was given exclusive supervisory responsibility over the juvenile and had the sole authority to determine the appropriateness of the aftercare program. We therefore find that the court was without jurisdiction to entertain the Corporation Counsel's motion, absent a fresh delinquency determination, and accordingly vacate the order revoking the appellant's aftercare status.
So ordered.[4]
NOTES
[1] Oak Hill is one of two residential centers where juveniles are committed subsequent to a transfer of legal authority to the Social Rehabilitation Administration.
[2] While it is clear that an alteration of a sentence to increase the penalty from that which was originally imposed will not be permitted, some courts have allowed a modification when it results in a lessening of the penalty. See United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931); Campbell v. United States, 103 U.S.App.D.C. 308, 258 F.2d 160 (1958).
[3] A statutory exception to this complete autonomy is that the court may retain a veto power over release, if specifically ordered at the time of disposition. This power even where reserved, however, does not extend so as to allow continued supervision or the authority to revoke, once release is approved. D.C.Code 1973, § 16-2322(a)(1).
[4] On the facts of this case, we are not called on to consider the applicability of or authority given to the Court by any other provisions of Title 16 of the D.C.Code or any other provision of the D.C. statutes and thus, we do not do so. Our holding is limited to the narrow issue presented by this record.