**In re D.L.; District of Columbia, Appellant.**

**No. 04–FS–1594.**

District of Columbia Court of Appeals.

Argued June 27, 2006.
Decided Aug. 3, 2006.

Janice Y. Sheppard, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, Edward E. Schwab, Deputy Attorney General, and Rosalyn Calbert Groce, Assistant Attorney General, were on the brief, for appellant.

Sabahat Chaudary, with whom Steven H. Goldblatt, Appellate Litigation Program, Georgetown University Law Center, was on the brief, as amicus curiae for appellee.*

Before FARRELL and REID, Associate Judges, and MORIN, Associate Judge, Superior Court of the District of Columbia.**

FARRELL, Associate Judge:

The District of Columbia ("the District") appeals from an order of the Superior Court terminating the probation of D.L., a juvenile who had previously been adjudged delinquent and whose probation the District was seeking to have revoked. At a hearing on the petition to revoke probation, the Superior Court judge did not disagree that D.L. had violated his probation (terming it "unsuccessful[ ]"), but declined to revoke it or to order one of the alternative dispositions specified by D.C.Code § 16–2327(d) (2001) where probation has been violated. Instead, the judge ruled that D.L.'s probation would be "terminated unsuccessfully," stating: "I think we're trying to squeeze blood from a stone. He's done what he can within his abilities."[1] With that ruling, the judge effectively "clos[ed] the case" (as the District states in its notice of appeal), relinquishing the court's jurisdiction over D.L.

We hold that the judge lacked statutory authority to rule as he did. Section 16–2327(d), as will be seen, provides the trial court with considerable but not unlimited discretion to fashion the manner of continued care and rehabilitation of a juvenile found to have violated terms of his probation. What it does not authorize, however, is for the judge to exercise none of the dispositional choices it specifies and instead to close out the case as, in effect, a failed attempt at rehabilitation once he determines that a juvenile has violated probation. As our decisions emphasize, the legislature has defined the law expressly in this area; in particular it has

* The court appointed Professor Goldblatt as *amicus curiae* after counsel appointed to represent D.L. on appeal, George J. Lane, declined to file a brief. The court is grateful to the Appellate Litigation Program at Georgetown University Law Center for its contribution on appellee's behalf. Attorney Lane's appointment will continue for purposes of the remand we order, unless and until he is relieved from the representation by the trial court.

** Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

1. The trial court was apparently referring to D.L.'s cognitive limitations in that a psychological report ordered by the court revealed that he had an I.Q. in the 50's and had other limitations.

"limit[ed] the authority of judges in delinquency cases," *In re P.S.*, 821 A.2d 905, 909 (D.C.2003), and "the court must act pursuant to [this] 'specifically granted authority.'" *Id.* at 908 (quoting *In re J.M.W.*, 411 A.2d 345, 348 (D.C.1980)). Accordingly, we must vacate the order in question and remand for the judge—assuming he is unable to find that D.L. no longer needs care and rehabilitation, *see* D.C.Code § 16–2317(d)—to exercise the discretion accorded him by § 16–2327(d). *See generally In re Ko.W.*, 774 A.2d 296, 303 (D.C.2001) (citing *Johnson v. United States*, 398 A.2d 354, 364 (D.C.1979)).[2]

## I.

On May 6, 2003, D.L. was adjudged delinquent based on his admissions that he had possessed marijuana and operated a motor vehicle without a permit. At an August 2003 disposition hearing, the judge found him in need of care and rehabilitation and placed him on probation for six months. The conditions of probation included enrollment and regular attendance at school and monitoring by a probation officer.

In February 2004, while the probation continued, the District petitioned to revoke it on the basis that D.L. had failed to enroll in or attend school and had not kept required appointments with the probation officer. The petition was not set for a hearing until December 2004. Meanwhile, in a series of orders the judge set additional conditions and held review hearings, and, when D.L. failed to appear at an April 2004 hearing, ordered him confined at the Oak Hill juvenile facility. He was later transferred to a less restrictive Youth Shelter House, a placement which the judge continued in September 2004, finding that, as before, "[p]lacement outside [D.L.'s] home is necessary for the welfare of [D.L.] and the safety and protection of the public."[3] In October 2004, the judge released D.L. on probation in the custody of his cousin, Ms. Q., ordering him to reside with her and requiring her to take concrete steps to "participate in the rehabilitation of [D.L.]." *See* D.C.Code § 16–2325.01.[4]

2. D.L. contends that the District has not preserved, or has only imperfectly preserved, its challenge to the judge's ruling on the petition to revoke. We disagree. When the judge stated his inclination to "terminate probation unsuccessfully," the District's attorney stated "I would object" and the District's position that, while "we are ... running out of options," a correct disposition might be to "consider a group home placement through the Youth Services Administration." Although counsel did not cite a particular statute that the judge's proposed order would violate, the objection was sufficient to preserve the claim that in effectively closing the case, the judge was exceeding his statutory authority. *See, e.g., Mills v. Cooter*, 647 A.2d 1118, 1123 n. 12 (D.C.1994); *Sebastian v. District of Columbia*, 636 A.2d 958, 959 n. 2 (D.C.1994).

3. At the September hearing the probation officer and parties discussed with the trial judge the problems they had in enrolling D.L. in school because of apparent difficulties in transferring records and the uncertainty of whether one local school would accept his enrollment in special education classes. The trial court also observed that he had attempted without success to have the Child and Family Services Agency investigate whether a neglect case should be opened because of apparent difficulties with having D.L.'s family cooperate. The trial judge ordered D.L. to a Youth Shelter Home, in part, to allow him to be enrolled in school by the shelter home.

4. At the October hearing, the trial judge was informed that D.L. was doing well at the Youth Shelter Home and was doing well at school. Upon hearing this information, the trial court commended D.L. for doing well but stated that he needed to see D.L. continue to do well after he was placed at home. The trial court placed D.L. with his cousin with the caveat that if he did not continue to do well it would be clear that he could only do well in structured environments such as the Youth Shelter House.

On December 14, 2004, the deferred hearing on the District's petition for revocation took place. In the presence of the parties, the judge briefly reviewed the record, including the unchallenged assertions of violation, but stated that as "this is not a typical case," his "inclination [was to] terminate probation unsuccessfully." When the District's counsel objected, stating that D.L. had not "done those things that would be necessary to allow him to remain at home" and that "we are certainly running out of options," the judge replied:

> This case is almost two years old.... [I]t's not his fault that his mother was on drugs when she carried him. It's not his fault that because she was on drugs he's got some difficulties figuring some things out.... I think we're trying to squeeze blood from a stone. He's done what he can within his abilities. Probation is terminated unsuccessfully.

## II.

■ Because D.L. was placed on probation for six months in August 2003, his probation ordinarily would have expired in February 2004. The parties agree, however, that the District's petition to revoke, filed before the end of the probationary term, extended it until the hearing and the judge's ruling on the petition. *See, e.g., Brown v. United States,* 666 A.2d 493, 495

(D.C.1995) (in adult probation context, "[t]he initiation of revocation proceedings within the probationary term automatically extends the term until the time the proceedings take place");[5] *see also Harris v. United States,* 612 A.2d 198, 206 (D.C. 1992) (absent "expression of legislative intent to the contrary," there is generally "no reason" to "treat juvenile and adult [probation revocation] differently"). Furthermore, although the judge's ruling implicitly denied the petition to revoke, the denial was not based upon a finding that the District had failed to prove a violation. On the contrary, D.L. concedes in his brief that the qualifier that the judge attached to the termination ("unsuccessfully") implies that the judge had "determin[ed] that D.L. had violated probation" in the sense that the violations were proven. At no stage has D.L. disputed that he violated the two conditions of school attendance and regular reporting to the probation officer; and so we take the judge's ruling as presupposing these probation violations.[6]

■ The question before us, therefore, is whether the judge, having found D.L. to be in violation of probation,[7] acted within his authority when he nonetheless neither revoked the probation nor chose an alternative disposition from among those enumerated by § 16–2327(d).[8] We conclude

---

5. By contrast, the court lacks authority to revoke probation after the expiration of the term ordered unless its statutory authority to extend probation has been preserved during the probationary period. *See Sumpter v. United States,* 564 A.2d 21, 24 (D.C.1989).

6. As set forth in footnote 4, *supra,* although at one time D.L. improved his performance on probation, at the final hearing the District observed, without objection or rebuttal, that he was "not doing well at home." Because the trial court closed the case without allowing further argument, the record does not reflect why, in the District's opinion, D.L. was not doing well. Nevertheless, as conceded by

D.L. on appeal, at all times the parties proceeded on the assumption that D.L. was in violation of probation.

7. Thus, this is not a circumstance where the trial court determines that a juvenile has remediated the violation or where any purported violation is *de minimis* in comparison to the juvenile's overall performance on probation, such that it finds that the violation is not proven.

8. Section 16–2327(a) provides in relevant part:

   (a) If a child on probation incident to an adjudication of delinquency or need of su-

that he did not. Section 16–2327 provides for two determinations by the court upon the District's filing of a revocation petition: whether the child has violated the terms of his probation and, if so, what disposition the court should order. Subsection (d) specifies the available dispositions, in part by reference to § 16–2320. Notably, subsection (d) does not include among those dispositions "termination" of the juvenile proceedings, something the legislature knew expressly how to provide for when it wanted to. *See, e.g.,* § 16–2317(d) (upon finding of delinquency, the court may nonetheless "terminate the proceedings and discharge the child from ... restriction[s] previously ordered" if it "finds [by clear and convincing evidence] that the child is not in need of care or rehabilitation"). As the District points out, the judge made no finding that D.L. no longer needed care or rehabilitation; if anything, the finding that he had violated his probation by failing to enroll in school and keep supervisory appointments showed the contrary. D.L. nevertheless argues on appeal (relying partly on the verb "may" in the

statute) that, even after a probation violation has been proven, subsection (d) does not limit the judge to the dispositional alternatives listed there, but permits him a fourth: simply to deny the petition for revocation and allow the probation, extended by the District's petition, to expire. D.L. contends that that is all the judge did here, and that it is consistent with the law regarding adult probation revocation, *see Harris v. United States, supra,* where the choice among dispositions upon a finding of violation remains "committed to the sound discretion of the trial judge," *Harris,* 612 A.2d at 203, without statutory limitation.

We do not believe the legislature has left the judge that discretion in the delinquency context. Rather, "in exercising its dispositional authority in delinquency cases, the court must act pursuant to 'specifically granted authority.'" *In re P.S.,* 821 A.2d at 908 (quoting *In re J.M.W.,* 411 A.2d at 348). Permitting a court that has found a violation to deny revocation and do nothing specified by subsection (d) would disregard

pervision violates any term of his probation he may be proceeded against in a probation revocation hearing.

\* \* \*

(d) If a child is found to have violated the terms of his probation, the Division may modify the terms and conditions of the probation order, extend the period of probation, or enter any other order of disposition specified in section 16–2320 for a delinquent child.

Section 16–2320(c), in turn, provides, as relevant:

If a child is found to be delinquent ... the Division exercising juvenile jurisdiction ... may order any of the following dispositions which will be in the best interest of the child:

(1) Any disposition authorized by subsection (a) of this section (*other than paragraphs* 3(A) *and* (5) *thereof*).

(2) Transfer of legal custody to a public agency for the care of delinquent children.

(3) Probation under such conditions and limitations as the Division may prescribe, including but not limited to the completion of parenting classes or family counseling in cases where either or both was ordered by the Division. [Emphasis added.]

Finally, Section 16–2320(a) provides in relevant part:

[T]he Division exercising juvenile jurisdiction ... may order any of the following dispositions which will be in the best interest of the child:

(1) Permit the child to remain with his or her parent, guardian, or other custodian, subject to such conditions and limitations as the Division may prescribe, including, but not limited to, ... services for the child and his or her parent, guardian, or other custodian. . . .

\* \* \*

(5) The Division may make such other disposition as is not prohibited by law and as the Division deems to be in the best interests of the child.

that command, a conclusion strengthened when we look to § 16–2320's dispositional alternatives incorporated by § 16–2327(d). Section 16–2320 gives the judge considerable discretion to shape rehabilitation, including to order probation, § 16–2320(c)(3), and to "permit the child to remain with his or her parent, guardian, or other custodian, subject to such conditions and limitations as the [court] may prescribe." Section 16–2320(a)(1). But, in contrast to the court's authority over a neglected child, the statute forbids the court, in the case of a delinquent child, to "make *such other disposition* as is not prohibited by law and as the [court] deems to be in the best interests of the child." Sections 16–2320(c)(1) & (a)(5) (emphasis added). In *In re P.S., supra,* we recognized that subsection (c)(1) "expressly limit[s] the authority of judges in delinquency cases," 821 A.2d at 909, and denies them authority—in *P.S.,* the power to direct the placement or future treatment of a delinquent child in the custody of the District's Department of Human Services—beyond "the constraints of the legal authority conferred by the statute." *Id.* at 912.

Effectively closing a juvenile case by terminating probation as "unsuccessful" despite—or precisely because of—violations would be the sort of "other disposition" that the legislature deliberately removed from the discretion of the court in delinquency cases. Each disposition allowed by § 16–2320 retains a necessary supervisory or monitoring role by the court in the care and rehabilitation of the child—something outright termination of the case plainly does not. Moreover, it bears emphasizing that the statute gives the judge flexibility in shaping a continued effort to rehabilitate the child despite relative lack of success so far; all it denies him is the additional power to terminate that process as a failure. The present case illustrates this flexibility. While the District's petition to revoke was pending, the judge successively placed D.L. on probation with conditions, ordered him detained at Oak Hill when he failed to appear at a hearing, placed him in a less restrictive facility, a Youth Shelter House, and then released him on probation to the custody of his cousin, Ms. Q. At the same time, using the additional authority of § 16–2325.01, he required the custodian to attend court hearings, parenting classes, and family counseling and to "follow through with probation referrals" on D.L.'s behalf. When the revocation petition then came on for a hearing and decision, nothing in the statute required the judge to alter any of these arrangements despite the fact that D.L. had violated his probation. Nor did anything require the judge to extend indefinitely the probation or D.L.'s placement in Ms. Q.'s custody "subject to conditions ... for [his] rehabilitation." *P.S.,* 821 A.2d at 908 (citing § 16–2320(a)(1)). What the law did require, though, was a disposition by the court from among the alternatives specified by § 16–2327(d), in keeping with the recognition that D.L. still needed rehabilitation—in the judge's earlier words—"for the welfare of [D.L.] and the safety and protection of the public." Simply declaring the probation to be, in effect, a failed experiment and ending it without more was not an option permitted by the statutory scheme and runs counter to the statutory command that the trial court may terminate the proceedings only if it finds by clear and convincing evidence that the child is not in need of care and rehabilitation. *See* § 16–2317(d).[9]

9. Although D.L. does not cite to or rely on Super. Ct. Juv. R. 48(b), we observe that the rule cannot, in any event, confer authority on the trial court inconsistent with the command of the statutes we have discussed. *See e.g.,*

We agree with the trial judge that evaluating the performance of a juvenile in the context of probation review and violation proceedings requires consideration of the juvenile's individual abilities to meet probationary terms. However, that consideration must be given within the framework of the court's "specifically granted authority." *In re P.S.*, 821 A.2d at 908 (citation omitted). Accordingly, the judge's order in this case must be vacated and the case remanded so that he may exercise the discretion accorded him by D.C.Code § 16–2327(d). It goes without saying that, if D.L. has shown rehabilitation since the December 2004 order under review—if, in other words, the significance of the probation violations has dissipated since that time—the court's re-intervention in D.L.'s life, as required by the statute, may be minimal. Furthermore, if the judge determines by clear and convincing evidence that D.L. is no longer in need of care and rehabilitation, § 16–2317(d), the case may be terminated.

*Order vacated and case remanded.*

*Flemming v. United States,* 546 A.2d 1001, 1004 (D.C.1988).